NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0237n.06

No. 25-1463

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 28, 2026
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| ERNESTINE HOGUE, | ) |
| Defendant-Appellant. | ) |
| | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: COLE, GRIFFIN, and READLER, Circuit Judges.

GRIFFIN, Circuit Judge.

Ernestine Hogue had two social security numbers. One number she obtained fraudulently, and under that number she collected benefits from the Social Security Administration. After the government discovered her scheme, she was charged with theft of government funds, with the charged period stretching from June 2003 to November 2015. The jury then found her guilty, and the district court sentenced her to time served and ordered restitution. When doing so, however, the district court considered an impermissible scope of restitution. Thus, we vacate the restitution order and remand for the district court to recalculate restitution.

I.

Hogue had one social security number (SSN) under her legal name. She fraudulently obtained another SSN under a fictitious identity. Between 1996 and 2015, she used the fraudulent SSN to collect disability benefits and Supplemental Security Income (SSI).

When the fraud came to light, the Social Security Administration (SSA) calculated the amount of benefits it had paid Hogue from 1996 through 2015, which totaled $141,920.20. The SSA also determined that Hogue had been entitled to $50,471.10 in SSI benefits under her true SSN over this period, but it did not identify how much she was entitled to by month or year. When reconciling these two amounts, the SSA determined that it had overpaid Hogue $91,449.10 as a result of her fraud.

Based on this information, prosecutors charged Hogue in a one-count criminal information with theft of government funds, with the charged period covering June 2003 through November 2015—which was not the same period the SSA had investigated, 1996 to 2015. A jury found her guilty of improperly receiving benefits as charged in the information, i.e., from June 2003 through November 2015.

At sentencing, when calculating Hogue's total offense level, the district court considered the net loss suffered by the SSA as a result of Hogue's crime under U.S.S.G. § 2B1.1(b)(1). To determine this amount, the district court adopted the SSA's calculation of $91,449.10 over the period it had investigated, 1996 through 2015. This led to a Guidelines range of 27 to 33 months of imprisonment. The district court sentenced Hogue to time served.

Then, when calculating the amount of mandatory restitution under 18 U.S.C. § 3663A, the district court found the same amount, $91,449.10, to be owed to the SSA, plus an additional $250 to the Department of the Treasury. The district court did not address whether all the $91,449.10 fell within the charged period of June 2003 through November 2015, even though the SSA derived that number from a period of time stretching seven years earlier.

Hogue timely appealed the order of restitution.[1]

II.

We review de novo legal questions about the permissible scope of restitution. *United States v. Gray*, 121 F.4th 578, 586 (6th Cir. 2024) (citing *United States v. Evers*, 669 F.3d 645, 654 (6th Cir. 2012)). The permissible scope of the restitution order includes the time period the order covers. *Id.* "If it is determined that restitution is permissible, then the amount of restitution is reviewed under the abuse-of-discretion standard." *Evers*, 669 F.3d at 654.

The Mandatory Victims Restitution Act (MVRA) requires restitution in the "full amount of each victim's losses" for property offenses like theft of government funds. 18 U.S.C. § 3664(f)(1)(A); *id.* § 3663A(b)(1)(B)(i), (c)(1)(A)(ii). Restitution under the MVRA, however, encompasses only losses caused by the specific conduct alleged in the charging document. *Gray*, 121 F.4th at 587–89. Thus, a restitution order must be confined to losses caused within the period the charging document identifies—not other losses caused by similar conduct before or after, as may be the case under U.S.S.G. § 2B1.1(b)(1) for purposes of establishing the Guidelines range of imprisonment based on net loss. *See Gray*, 121 F.4th at 587–89; *United States v. Hills*, 27 F.4th 1155, 1202 (6th Cir. 2022); *United States v. Esway*, 488 F. App'x 969, 971 (6th Cir. 2012) (per curiam).

Here, the district court found that the restitution owed to the SSA as a result of Hogue's offense was $91,449.10. That number was based on the SSA's overpayment calculation, which included benefits improperly paid to Hogue from 1996 through 2015. But Hogue was charged

---

[1]Although Hogue also raised a challenge in her appellate brief to the district court's net-loss determination under U.S.S.G. § 2B1.1(b)(1), which suggested that she was challenging her sentence of time served, she conceded at oral argument that she only disputes the district court's net-loss determination insofar as it impacts the restitution order.

only for conduct occurring from June 2003 through November 2015—a seven-year difference. And when setting the amount of restitution, the district court seemed to be considering conduct by Hogue occurring seven years before. In fact, the district court specifically acknowledged that it was adopting the net-loss amount as the amount of restitution, and the former encompassed conduct from 1996 to 2003. Thus, the district court relied on an impermissible scope to calculate restitution.

Because this error necessitates a recalculation of restitution, we do not reach the question whether the district court abused its discretion in determining the actual amount of restitution. We note, however, that this is entirely possible, given that the $91,449.10 loss calculated by the SSA and adopted by the court was derived from benefits improperly paid to Hogue from 1996 to 2015. We also note that the loss for purposes of restitution is limited to the "pecuniary harm that would not have occurred but for the defendant's criminal activity." *See United States v. Clay*, 162 F.4th 757, 773 (6th Cir. 2025) (per curiam) (quoting *United States v. Carrasquillo-Vilches*, 33 F.4th 36, 45 (1st Cir. 2022)). Finally, the amount of restitution should not include funds that Hogue has repaid to the SSA. *See* 18 U.S.C. § 3663A(b)(1)(B)(ii).

\* \* \*

We vacate the restitution order and remand for the limited purpose of recalculating restitution. On remand, the district court should (1) determine the permissible time period for restitution and (2) determine the pecuniary loss suffered by the SSA during this time period.